UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT LEE FLEMISTER, :
         Petitioner :
          :
     v. : CASE NO. 1:15-CV-00187
          :
DOC/STEVEN R. GLUNT, *et al.*, :
         Respondents :

*M E M O R A N D U M*

*I.       Introduction.*

Presently before the court is Magistrate Judge Karoline Mehalchick's report and recommendation (Doc. 22) to petitioner Vincent Lee Flemister's ("Flemister") petition (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Flemister has filed multiple objections to the report and recommendation. For the reasons that follow, Flemister's objections will be overruled, and his petition will be denied.

*II.      Background.*

Judge Mehalchick's report summarized the pertinent state-court history of Flemister's underlying criminal conviction as follows.

> In his petition, Flemister challenges his May 18, 2010 sentence in the Court of Common Pleas of Cumberland County to 21-45 years in prison after he was convicted by jury on March 11, 2010 of charges including robbery, aggravated assault, conspiracy to commit robbery, burglary, attempted homicide, and criminal trespass. After post-sentence motions, Flemister appealed his conviction to the Superior Court of Pennsylvania on July 23, 2010, which affirmed the judgment of sentence on December 28, 2011. Flemister did not seek allocator in the Pennsylvania Supreme Court on direct appeal. Attorney Shane Kope represented Flemister during pre-trial proceedings, trial, and sentencing, while attorneys Taylor Andrews and Arla Waller were appointed to represent Flemister on direct appeal.

> Upon the conclusion of direct review, Flemister filed a *pro se* petition for collateral relief under the Pennsylvania Post-Conviction Relief Act ("PCRA") in the Cumberland County Court of Common Pleas (the "PCRA Court") on May 25, 2012, alleging ineffective assistance of trial counsel. The PCRA Court appointed attorney Dirk Berry as Flemister's PCRA counsel and gave him leave to file an amended PCRA petition on Flemister's behalf. Berry filed a counseled amended PCRA petition on Flemister's behalf on September 27, 2012. After holding an evidentiary hearing, the PCRA Court denied Flemister's PCRA petition on May 17, 2013. Flemister appealed the denial of his PCRA petition to the Superior Court on June 13, 2013, which affirmed the PCRA Court's decision on February 4, 2014. On March 4, 2014, Flemister sought allowance of appeal with the Pennsylvania Supreme Court, which was denied on August 13, 2014. Berry continued to represent Flemister throughout these PCRA appeals.

(Doc. 22 at 1-3) (footnotes and some internal citations omitted).[1]

On January 19, 2015, Flemister filed the instant federal habeas petition. In his petition, Flemister contends that he is eligible for federal habeas relief on four grounds, all of which allege ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. First, Flemister asserts that trial counsel rendered ineffective assistance by failing to investigate, interview, or call alibi witnesses. (Doc. 1 at 5-7). Second, Flemister contends that trial counsel rendered ineffective assistance by failing to request an alibi jury instruction. (*Id.* at 8-9). Third, Flemister argues that trial counsel rendered ineffective assistance by failing to inspect and object to the introduction of sales documents that established an alibi for another potential suspect in the case, and,

---

[1] In recounting the state-court history of the underlying criminal matter, Judge Mehalchick permissibly took judicial notice of the public dockets of Flemister's criminal proceedings and collateral PCRA proceedings. *See, e.g.*, *Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988) (habeas case in which the Third Circuit Court of Appeals stated, "[W]e take judicial notice of all relevant parts of the state court record, whether or not they appear in the joint appendix prepared by the parties to this appeal.").

furthermore, Flemister suggests that PCRA counsel rendered ineffective assistance by failing to raise this claim throughout the course of PCRA proceedings. (*Id.* at 11-14). Fourth, Flemister contends that trial counsel rendered ineffective assistance by failing to object to a suggestive in-court identification process that resulted in witnesses identifying him as the gunman, and he further takes issue with PCRA counsel's failure to identify and raise this ground for PCRA relief before the PCRA court. (*Id.* at 14-18).

On December 19, 2016, Respondents filed a response (Doc. 18) to Flemister's petition. Therein, Respondents contend that all of Flemister's claims lack merit, and furthermore, they assert that Flemister's third and fourth claims are procedurally defaulted because he failed to raise those claims in his state-court PCRA proceedings.

In her report, Judge Mehalchick concluded that Flemister's first and second claims, which he also raised in his state-court PCRA proceedings, lacked merit for reasons that will be discussed in greater detail below. (Doc. 22 at 17-19). With regard to Flemister's third and fourth claims, Judge Mehalchick noted that Flemister failed to exhaust his state-court remedies by raising either of those claims in his PCRA proceedings and that the timeframe for doing so has expired. (*Id.* at 6). Consequently, Judge Mehalchick determined that Flemister's third and fourth claims are procedurally defaulted, and she further concluded that Flemister failed to identify justifiable cause to excuse the procedural default. (*Id.* at 6-12). Accordingly, Judge Mehalchick recommended that Flemister's entire habeas petition be denied. (*Id.* at 20).

On September 5, 2017, Flemister filed objections (Doc. 25) to the report and recommendation. Flemister objects to Judge Mehalchick's findings as to the first and second claims of his habeas petition, but he raises no objection to Judge Mehalchick's

3

findings as to the third and fourth claims. Judge Mehalchick's report and recommendation is ripe for review.

*III.        Legal Standards*

A. Standard of Review – Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court must review *de novo* the contested portions of the report. 28 U.S.C. § 636(b)(1)(C); M.D. Pa. Local Rule 72.3. "In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge." *Montanez v. Walsh*, No. 3:CV-13-2687, 2014 WL 47729, at *2 (M.D. Pa. Jan. 7, 2014) (citing 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993)). Uncontested portions of the report are reviewed for "clear error on the face of the record." *Clouser v. Johnson*, 40 F. Supp. 3d 425, 430 (M.D. Pa. 2014) (quoting *Cruz v. Chater*, 990 F. Supp. 375, 375-78 (M.D. Pa. 1998) (quoting 1983 Advisory Committee Notes to Federal Rule of Civil Procedure 72(b))).

B. Federal Habeas Law

When a petitioner's federal claims have been adjudicated against him by the state courts, habeas review of the state courts' resolution of the claims is governed by 28 U.S.C. § 2254(d)(1) and (d)(2). Review of a petitioner's federal claims under 28 U.S.C. § 2254 is guided by the following rules:

> Under subsection (d)(1), we may grant the writ if the state courts' adjudication of the claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent. "[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context,

4

> or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009) (cited cases omitted). "The unreasonable application test is an objective one – a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (cited cases omitted). If "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief cannot be granted. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoted case omitted).
>
> Under subsection (d)(2), we may grant the writ if the state courts' adjudication of the claims "resulted in a decision that was based on a[n] unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "A state court decision is based on 'an unreasonable determination of the facts' only if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state–court proceeding.'" *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoted case omitted). State–court fact finding "is presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

*Grego v. Kerestes*, No. 1:13-CV-2675, 2016 WL 192723, at *1 - *2 (M.D. Pa. Jan. 15, 2016) (Caldwell, J.).

### C. Ineffective-Assistance-of-Counsel Claims

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test that must be satisfied in order to establish that counsel's performance amounted to ineffectiveness. Specifically, a defendant must show that: (1) counsel's performance fell below an objectively reasonable standard, and (2) the defendant was prejudiced by that performance. *Id.* at 687. With regard to the first prong, "[t]he question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Richter*, 562 U.S. at 88.

5

"It is critical that courts be 'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689-90). "There is a 'strong presumption' that counsel's representation is within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 689. "[T]he mere existence of alternative—even preferable or more effective—strategies does not satisfy the requirements of demonstrating ineffectiveness under *Strickland*." *Marshall*, 307 F.3d at 86. "In part, this is because the purpose of the rule is not to improve the standard of professional conduct, but only to protect a defendant's right to counsel." *Id.* at 85 (citing *Strickland*, 466 U.S. at 689).

As for the second prong of the *Strickland* test, in order to establish prejudice, one must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall*, 307 F.3d at 85 (citing *Strickland*, 466 U.S. at 697).

"Establishing that a state court's application of *Strickland* was unreasonable under [28 U.S.C. § 2254(d)] is even more difficult, since both standards are highly deferential . . . and since *Strickland*'s general standard has a substantial range of reasonable applications." *Richter*, 562 U.S. at 88-89 (internal citation and quotation omitted). To establish that a state court's application of *Strickland* is unreasonable, one must demonstrate that "the state court decision, evaluated objectively and on the merits,

resulted in an outcome that cannot be reasonably justified under *Strickland.*" *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

*IV.    Discussion*

    A.  <u>The Uncontested Portions of the Report and Recommendation</u>

Flemister does not object to Judge Mehalchick's findings as to his third and fourth ineffectiveness claims. As such, we review those findings for clear error on the face of the record. Upon such review, we find that Judge Mehalchick's factual findings and legal conclusions as to Flemister's third and fourth claims are accurate, thorough, and well-reasoned. Therefore, we adopt Judge Mehalchick's report to the extent that it discusses Flemister's third and fourth claims, and we conclude that those claims are procedurally defaulted and must be dismissed with prejudice.

    B.  <u>The Contested Portions of the Report and Recommendation</u>

Flemister objects to Judge Mehalchick's findings as to his first and second ineffectiveness claims. Accordingly, we conduct a *de novo* review of those findings. After such review, we agree with Judge Mehalchick's legal findings and conclusions regarding those claims.

In his first claim for relief, Flemister contends that trial counsel was ineffective for failing to call, investigate, or interview particular alibi witnesses to testify at his trial. Flemister asserts that his alibi witnesses would have established that he was at home at the time the crime occurred and that he was wearing a blue shirt and tan pants as opposed to the black clothing worn by the shooter. In his second claim, Flemister contends that trial counsel was ineffective for failing to request an alibi jury instruction. To provide context for these two claims, it is helpful to briefly recite the facts and evidence

7

presented at Flemister's trial that led to his conviction, as well as those presented at Flemister's subsequent PCRA hearing. The facts established at Flemister's jury trial were summarized by the PCRA court as follows:

> On the afternoon of December 29, 2008, [Flemister] and his codefendant, Andres Rodriguez ("Rodriguez"), conspired to rob Warren Dowling ("Dowling"), who resided at 316 North College Street in Carlisle, Pennsylvania. Dowling, a drug dealer, had marijuana inside of the home on the date in question. Also in the home at the time was Dowling's stepbrother, Bryan Newell ("Newell"), and Newell's fiancée, Jenna Keller ("Keller").
>
> At around 2:30 p.m., Flemister entered the home via an unlocked rear door on the first floor. At that time, Rodriguez was already inside of the home, in a second floor bedroom with Dowling. Once inside, Flemister encountered Newell and Keller, demanded money, and asked them whether anyone else was in the house. Flemister then grabbed Keller by the neck, pointed a handgun to her head, and forced her toward a staircase. Newell intervened in Keller's defense. After a struggle, Flemister shot Newell in the neck, instantly paralyzing him from the chest down. Flemister and Rodriguez then fled the scene. Officers of the Carlisle Borough Police Department responded to the scene and Keller gave them a description of the shooter as being a tall, black male, who was wearing a black hooded sweatshirt and a red bandanna covering his face. The police also questioned Newell, who gave a similar description of the shooter. After an investigation, the police arrested Flemister the following day.
>
> At trial, several eye witnesses identified [Flemister] as the shooter. Specifically, Keller, Newell, and perhaps most damning, [Flemister's] co-conspirator, Rodriguez, who also gave extensive testimony regarding the planning and execution of the crime. The testimony established that [Flemister] and Rodriguez left their place of employment a little before 2:00 p.m. and proceeded to drop off Rodriguez'[s] wife and another co-worker before going to [Flemister's] residence. [Flemister] entered his residence and emerged five to ten minutes later dressed in black and armed with a pistol. He and Rodriguez then proceeded to 316 North College Street where the crime occurred shortly thereafter.

8

> [Flemister] testified on his own behalf at trial. According to his version of events, the four coworkers left work shortly before 2 p.m. Though he testified, as did Rodriguez, that Rodriguez'[s] wife and their other coworker were dropped off first, [Flemister] never testified as to the precise time he was dropped off at home. He went on to say that he was at home for thirty minutes or so before going to the store, from which he returned thirty to forty minutes later. Ultimately, the jury found [Flemister's] testimony not credible and found him guilty of all charges.

(Doc. 18-5 at 32-34).

The testimony and arguments proffered at Flemister's PCRA hearing were summarized by the PCRA court as follows:

> At the PCRA hearing, Defendant presented three purported alibi witnesses besides himself: William Flemister [Flemister's brother], Christine Flemister [Flemister's sister], and Heather Good [William's girlfriend]. Defendant's testimony at the hearing was slightly different from his testimony at trial, in that he was able to testify with more specificity as to the timing of the crucial events relating to his potential alibi. Specifically, he testified that he was dropped off at home at 2:00 p.m., stayed home for thirty minutes, then left for the store, and was gone for only fifteen minutes. At trial, he had described his trip to the store as lasting thirty to forty minutes. Thus, he tried to alibi himself as being at home during the time of the crime.
>
> William Flemister testified that he left for work that day between 2:00 and 2:15 p.m. and did not see Defendant before he left. As such, his testimony, on its face presents no alibi defense.
>
> Christine Flemister testified that she observed Defendant arrive at home between 2:00, 2:15, or 2:30 p.m. She also stated that Defendant was home for about forty minutes until he left for the store at approximately 3:00 p.m.
>
> Finally, Heather Good testified on Defendant's behalf, stating William Flemister left for work between 2:00 and 2:15 p.m. and Defendant arrived shortly thereafter.
>
> At the PCRA hearing, trial counsel testified as to his trial strategy and why he did not seek an alibi instruction. He

9

> recalled [Flemister] suggesting he call William and Christine Flemister, but he declined to on the basis that their proposed testimony would have undermined his theory of the case and served to provide a definitive window in which Defendant could have committed the crime in question.
>
> Thus, the only alibi witness remaining would be [Flemister] himself, and trial counsel believed that without any corroborative witnesses, seeking an alibi instruction on this basis would be futile and possibly counterproductive as it would have presented multiple defenses rather than focusing solely on attacking the Commonwealth's evidence.

(*Id.* at 35-36).

### 1. The PCRA Court's Decision and Reasoning

Based on the testimony presented at the PCRA hearing, including that of Flemister's trial counsel, the PCRA court determined that Flemister failed to establish an ineffectiveness claim and denied his PCRA petition. First, the PCRA court held that trial counsel had a reasonable basis for declining to call Flemister's purported alibi witnesses[2] and for declining to request an alibi jury instruction. The PCRA found that since Christine Flemister's testimony would have provided a window for Flemister to commit the alleged crime before returning to his residence and because Christine's testimony would have contradicted Flemister's own testimony as to the amount of time he spent at his residence before going to the store, trial counsel was justified in believing that Christine's testimony would not have supported trial counsel's theory of the case and may have even hurt it. (*Id.* at 38). Additionally, the PCRA court suggested that William Flemister's testimony would not have provided Flemister with an alibi because William testified that he left the residence at 2:00 or 2:15 p.m. and never observed Flemister before he left the house; as

---

[2] According to trial counsel Shane Kope's testimony at the PCRA hearing, Flemister mentioned Christine and William Flemister as possible alibi witnesses, but Flemister never mentioned Heather Good as a potential alibi witness. (Doc. 18-6, at 30-48).

such, William could not speak as to Flemister's whereabouts at the time the crime allegedly occurred. (*See id.* at 36) (noting that "William Flemister testified that he left for work that day between 2:00 and 2:15 p.m. and did not see Defendant before he left. As such, his testimony, on its face presents no alibi defense.").

Second, the PCRA court noted that even if trial counsel had erred in failing to present the proposed alibi witnesses or to request an alibi jury instruction, Flemister failed to establish a reasonable probability that such errors affected the outcome of the proceedings. At trial, there was overwhelming evidence of Flemister's guilt, including Rodriguez's in-depth testimony regarding Flemister's involvement in the crime, forensic evidence of gunshot residue on Flemister's hand shortly after the shooting, and both victims' unequivocal positive identifications of Flemister in the courtroom. (*Id.* at 39). Additionally, the PCRA court reasoned that "any prejudice [Flemister] may [have] suffered from the lack of an alibi instruction was significantly mitigated by the fact that [Flemister] testified on his own behalf at trial and had a full and complete opportunity to tell the jury his version of the events." (*Id.*). The PCRA court noted: "Clearly, the jury was aware that it could accept [Flemister's] testimony as truthful and accurate. Instead, they rejected it. That his story was not explicitly characterized as an alibi is of no moment." (*Id.* at 40).

2. Judge Mehalchick's Report and Recommendation

After Flemister unsuccessfully appealed the PCRA court's finding to both the Superior Court of Pennsylvania and the Supreme Court of Pennsylvania, Flemister filed the instant federal habeas petition. In Judge Mehalchick's report, she, like the PCRA court, concluded that trial counsel's decision not to call Flemister's purported alibi witnesses or to request an alibi jury instruction did not amount to ineffective assistance of

counsel under *Strickland*. Judge Mehalchick noted that since the ineffectiveness test utilized by Pennsylvania courts is not contrary to the federal *Strickland* test, this court may only grant Flemister habeas relief upon a finding that any relevant underlying state court decisions involved an unreasonable application of *Strickland*. (Doc. 22 at 14). Further, Judge Mehalchick noted that because the ineffective assistance of counsel claims regarding the alibi witnesses and alibi instruction were already adjudicated on the merits in state court, this court's review of pertinent state court rulings is doubly deferential. (*Id.*) (citing *Showers v. Beard*, 635 F.3d 625, 629 (3d Cir. 2011)). In thoroughly analyzing the PCRA court's opinion,[3] Judge Mehalchick found that "the PCRA Court reasonably concluded that Flemister satisfied neither the performance nor the prejudice components of the *Strickland* two-part test with respect to Flemister's two exhausted grounds for relief." (*Id.* at 18).

First, Judge Mehalchick agreed with the PCRA court's conclusion that trial counsel was not objectively unreasonable in failing to present potential alibi witness testimony or request a specific alibi jury instruction. Like the PCRA court, Judge Mehalchick concluded that "[t]rial counsel reasonably felt that Flemister's alibi witnesses were not particularly helpful because their testimony—even if accepted as credible by the jury—still would have left open a window of opportunity for Flemister to commit the crime while simultaneously contradicting Flemister's own timeline of events." (*Id.*) (citation omitted). Furthermore, Judge Mehalchick reasoned that "it was also reasonable for trial

---

[3] Judge Mehalchick noted that "[a] federal habeas court generally reviews the last reasoned state-court opinion" and that "courts may bypass an unreasoned higher state court opinion that does not supplement the lower court's decision in a meaningful way." (Doc. 22 at 14 n.6) (citations and internal quotation marks omitted). As such, since the Superior Court of Pennsylvania simply adopted the reasoning of the PCRA court in denying Flemister's PCRA appeal and the Supreme Court of Pennsylvania denied allowance of appeal, Judge Mehalchick reviewed the PCRA court's opinion as the last reasoned state-court opinion in this matter. *Id.*

12

counsel to calculate that emphasizing an alibi defense by seeking a specific jury instruction could distract the jury from efforts to discredit Rodriguez and refute the evidence of gunshot residue on Flemister's hand." (*Id.* at 19) (citations omitted). As such, Judge Mehalchick concluded that Flemister failed to meet the first prong of the *Strickland* test.

Second, Judge Mehalchick agreed with the PCRA court's conclusion that even if trial counsel had erred by failing to call Flemister's purported alibi witnesses or to request an alibi instruction, Flemister does not establish that such errors were prejudicial. Judge Mehalchick, like the PCRA court, noted that substantial evidence of Flemister's guilt was presented at trial, and further reasoned that "Flemister presents no evidence or argument to rebut trial counsel's assertion during the PCRA hearing that Flemister's alibi defense was weak at best." (*Id.* at 19-20).

3. Flemister's Objections to the Report and Recommendation

Flemister raises four objections[4] to Judge Mehalchick's report and recommendation. We find all of them to be unpersuasive.

First, with regard to "Objection One(A)", Flemister objects to the conclusions of Judge Mehalchick and the PCRA court that trial counsel made a reasonable decision not to call Flemister's purported alibi witnesses at trial. Flemister contends that trial counsel could not have had a reasonable basis upon which to make such a decision because, according to him, trial counsel never interviewed the purported alibi witnesses, nor did trial counsel investigate Flemister's claims that the witnesses would provide an

---

[4] While Flemister only raises two numbered objections, each of the two numbered objections is broken down into two subparts; specifically, Objection One is broken down into Objection One(A) and Objection One(B), whereas Objection Two is broken down into Objection Two(A) and Objection Two (B).

13

alibi for Flemister. (Doc. 25 at 2-5). As Judge Mehalchick aptly pointed out, however, trial counsel's failure to call or even contact the witnesses does not amount to ineffective assistance of counsel in the instant matter because "[d]efense counsel has no obligation to call, or even to interview, a witness whose testimony . . . would have been inconsistent with the theory of defense." *United States v. Jones*, 785 F.Supp. 1181, 1183 (E.D. Pa.), *aff'd*, 980 F.2d 725 (3d Cir. 1992) (table). Trial counsel had no duty to call or even interview any of Flemister's three purported witnesses because, as counsel reasonably concluded, the testimony of all the purported witnesses, as offered at the PCRA hearing, would have either failed to provide Flemister with an alibi or would have contradicted Flemister's own version of the events.

William Flemister testified that on the afternoon of the crime, he left his residence at around 2:00 or 2:15 p.m. and that when he left, Flemister had not yet arrived at the residence. Because William left the Flemister residence without observing Flemister in the home, William's testimony could not establish that Flemister was at his own home at the time of the crime. As for Heather Good, trial counsel testified at the PCRA hearing that Flemister never mentioned Good as a potential alibi witness. (Doc. 18-6 at 30-48). Even if Flemister had suggested Good as a witness, however, she would not necessarily have established an alibi for Flemister. Good testified at the PCRA hearing that she was at the Flemister residence when William left for work at around 2:00 or 2:15 p.m. and that she admitted Flemister into the house a few minutes later. (*Id.* at 24-29). Good left the house about 10 to 15 minutes after Flemister arrived and noticed that Flemister was wearing a blue shirt. (*Id.* at 27). Given Good's uncertain approximations of time, however, Good's testimony also fails to establish with certainty that Flemister was at

his home at the time the shooting allegedly occurred. Finally, as for Christine Flemister, she testified that Flemister arrived at the residence between approximately 2:00 and 2:30 p.m. and that he briefly played with his daughter before leaving for the store at around 3:00 p.m. wearing a blue shirt and tan pants. (*Id.* at 15-24). Because of its uncertainty, however, Christine's testimony still fails to definitively eliminate a window of opportunity in which Flemister may have committed the crime. Furthermore, as pointed out by the PCRA court and by Judge Mehalchick, Christine's testimony as to when Flemister arrived at his house and how long he was there before going to the store was somewhat inconsistent with that which Flemister presented at trial. (Doc. 22 at 17-18). Given the potential weaknesses of Flemister's proposed alibi witness testimony, it was entirely reasonable, as Judge Mehalchick concluded, for trial counsel to conclude that the more appropriate and effective defense strategy was to refute the evidence of gunshot residue on Flemister's hand and to discredit the prosecution's star witness, co-defendant Rodriguez. (*See* Doc. 22 at 18-19).

Second, with regard to "Objection Two(A)", Flemister contends that Judge Mehalchick and the PCRA court erred in concluding that trial counsel made a reasonable decision not to request an alibi jury instruction at trial. Flemister contends that because his own trial testimony, if believed, established an alibi, he was entitled to an alibi instruction. (Doc. 25 at 6-7). Flemister, however, also raised the alibi-instruction claim in his PCRA petition, and the PCRA court pointed out that counsel, in certain circumstances, "may have a reasonable basis for deciding not to request an alibi jury instruction even when it would be permissible to request one." (Doc 18-5 at 37) (citing *Commonwealth v. Hawkins*, 894 A.2d 716 (Pa. 2006)). While Flemister acknowledges that counsel may

15

decline to request an alibi instruction in reasonable circumstances, he asserts that such reasonable circumstances were not present here. (Doc. 25 at 6-7).

We disagree. The PCRA court noted that "counsel ha[s] a reasonable basis for declining the [alibi] instruction when the counsel f[inds] that the 'alibi testimony is weak, or is predicated on the defendant's testimony alone . . . .'" (Doc. 18-5 at 37-38) (quoting *Hawkins*, 894 A.2d at 730)). Given this dictate, the PCRA court found that Flemister's trial counsel had a reasonable basis for declining to request an alibi instruction because, as discussed above, the testimony of Flemister's purported alibi witnesses would have been weak and, perhaps, even harmful to Flemister's defense. (*Id.* at 38-39). Like Judge Mehalchick, we find the PCRA court's reasoning correct, and we further agree with Judge Mehalchick's finding that "it was also reasonable for trial counsel to calculate that emphasizing an alibi defense by seeking a specific jury instruction could distract the jury from efforts to discredit Rodriguez and refute the evidence of gunshot residue on Flemister's hand." (Doc. 22 at 19).

We next turn to "Objection One(B)" and "Objection Two(B)," which we will discuss together. Both of these objections involve the prejudice prong of the *Strickland* test. Flemister contends that contrary to Judge Mehalchick's conclusions, trial counsel's failure to present the proposed alibi witnesses and his failure to request an alibi instruction likely impacted the outcome of trial. We disagree.

Judge Mehalchick and the PCRA court concluded that the evidence presented against Flemister at trial was overwhelming. Eyewitnesses positively identified Flemister as the shooter. These witnesses included two victims and Rodriguez. Rodriguez testified in detail concerning the manner in which he and Flemister planned to

execute the crime.  Additionally, the Commonwealth presented forensic evidence that gunshot residue was present on Flemister's hand shortly after the crime occurred.

Flemister, in his objections, attempts to argue that this evidence was not in fact overwhelming.  He contends that the victims' identifications were not unequivocal because according to the victims, he was wearing a bandana over his face and a hooded sweatshirt, and his victims only could see his eyes while the crime was occurring.  (Doc. 25 at 5, 9).  Additionally, Flemister suggests that Rodriguez's testimony lacked credibility because Rodriguez allegedly made several contradictory statements before and during Flemister's trial.  (*Id.*).  Flemister also points out that he presented an expert witness to refute the Commonwealth's evidence of the gunshot residue allegedly on his hand after the shooting.  (*Id.*).

Flemister's arguments, however, do not alter the fact that the evidence presented against him at trial was overwhelming.  Although Flemister may *subjectively* believe that the Commonwealth's evidence was not overwhelming, an *objective* observer, such as a juror, would have been entirely justified in finding that the Commonwealth's evidence was more than sufficient to support a finding of guilt.[5]

Further, as the PCRA court suggested, and Judge Mehalchick acknowledged in her report, Flemister himself offered testimony to suggest that he was at home during the time of the crimes.  As such, Flemister attempted to present his own alibi defense through his testimony, but the jury found Flemister's testimony to be unconvincing

---

[5] To the extent that Flemister disputes the credibility of any of the Commonwealth's witnesses, this fails to provide support for his claims.  It is apparent that the jury deemed the Commonwealth's witnesses to be more credible than the defense witnesses, and we will not disturb the jury's determination of credibility.  It is well-established that "a reviewing court must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for that of the jury." *U.S. v. Burnett*, 773 F.3d 122, 135 (3d Cir. 2014) (citations and internal quotation marks omitted).

17

and convicted him of the offenses. In his objections, Flemister contends that because the jury was never charged explicitly with an alibi jury instruction, "the jury was [n]ever informed how to asses [sic] [Flemister's] alibi evidence" and that therefore, "he was effectively deprived of a substantive defense." (Doc. 25 at 9). The fact that the jury was never charged with the word "alibi" or explicitly told that Flemister's testimony purported to establish an "alibi," however, does not alter the fact that the jury rejected Flemister's testimony. We are hard-pressed to find that merely utilizing the word "alibi" to describe that testimony would have affected the jury's determination as to the credibility of said testimony. Therefore, we are not persuaded by Flemister's argument that counsel's alleged errors likely affected the outcome of his trial.

V.      *Conclusion.*

Upon review of Judge Mehalchick's report and recommendation, as well as Flemister's objections thereto, we find that Flemister's objections are unpersuasive. Judge Mehalchick's report offers a thorough, accurate, and well-reasoned analysis of the facts and legal issues pertinent to the claims raised in Flemister's habeas petition, and we agree that the PCRA court did not unreasonably apply the *Strickland* standard in determining that Flemister's ineffective assistance of counsel claims fail on the merits. We will adopt Judge Mehalchick's report and recommendation as supplemented by this memorandum, and will deny Flemister's habeas petition. An appropriate order will follow.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge